Justice Souter
(hereinafter dissent) argues that the advent of DNA testing has resulted in the “exoneratio[n]” of "innocent” persons "in numbers never imagined before the development of DNA tests.” Post, at 208. Based upon this “new empirical argument about how Meath is different,’” post, at 210, the dissent concludes that Kansas’ sentencing system permits the imposition of the death penalty in the absence of reasoned moral judgment.
But the availability of DNA testing, and the questions it might raise about the accuracy of guilt-phase determinations in capital cases, is simply irrelevant to the question before the Court today, namely, the constitutionality of Kansas’ capital sentencing system. Accordingly, the accuracy of the dissent’s factual claim that DNA testing has established the “innocence” of numerous convicted persons under death sentences—and the incendiary debate it invokes—is beyond the scope of this opinion.[7]
*181 The dissent’s general criticisms against the death penalty-are ultimately a call for resolving all legal disputes in capital cases by adopting the outcome that makes the death penalty more difficult to impose. While such a bright-line rule may be easily applied, it has no basis in law. Indeed, the logical consequence of the dissent’s argument is that the death penalty can only be just in a system that does not permit error. Because the criminal justice system does not operate perfectly, abolition of the death penalty is the only answer to the moral dilemma the dissent poses. This Court, however, does not sit as a moral authority. Our precedents do not prohibit the States from authorizing the death penalty, even in our imperfect system. And those precedents do not empower this Court to chip away at the States’ prerogatives to do so on the grounds the dissent invokes today.
* * *
We hold that the Kansas capital sentencing system, which directs imposition of the death penalty when a jury finds that aggravating and mitigating circumstances are in equipoise, is constitutional. Accordingly, we reverse the judgment of the Kansas Supreme Court and remand the case for further proceedings not inconsistent with this opinion.

It is so ordered.

 But see The Penalty of Death, in Debating the Death Penalty: Should America Have Capital Punishment? The Experts on Both Sides Make Their Best Case 117, 127-132, 134 (H. Bedau & P. Cassell eds. 2004). See *181 also Markman & Cassell, Protecting the Innocent: A Response to the Bedau-Radelet Study, 41 Stan. L. Rev. 121, 126-145 (1988) (examining accuracy in use of the term “innocent” in death penalty studies and literature); Marquis, The Myth of Innocence, 95 J. Crim. L. & C. 501, 508 (2005) (“Words like ‘innocence’ convey enormous moral authority and are intended to drive the public debate by appealing to a deep and universal revulsion at the idea that someone who is genuinely blameless could wrongly suffer for a crime in which he had no involvement”); People v. Smith, 185 Ill. 2d 532, 545, 708 N. E. 2d 365, 371 (1999) (“While a not guilty finding is sometimes equated with a finding of innocence, that conclusion is erroneous. . . . Rather, [a reversal of conviction] indicates simply that the prosecution has failed to meet its burden of proof”).